**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RONALD EDDMONDS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 11 C 8627 |
| | ) | |
| ALLAN MARTIN, Warden, Shawnee | ) | |
| Correctional Center, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Petitioner Ronald Eddmonds is a state prisoner in the custody of Respondent Allan

Martin, Warden of Shawnee Correctional Center in Vienna, Illinois.  In this federal action,

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254 on the basis that

Respondent is holding him in violation of his rights under the United States Constitution.  For

the reasons that follow, the Court denies Petitioner's application for a writ of habeas corpus.

The Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

### BACKGROUND

**I.      Arrest and Trial**

A federal habeas court sitting in review of a state court judgment pursuant to 28 U.S.C. §

2254 will "presume state factual findings to be correct, unless the petitioner rebuts the

presumption by clear and convincing evidence."  *Morgan v. Hardy*, 662 F.3d 790 (7th Cir. 2011)

(citing 28 U.S.C. § 2254(e)(1)); *see also Miller-El v. Dretke*, 545 U.S. 231, 240, 125 S. Ct. 2317,

162 L. Ed. 2d 196 (2005); *Wiggins v. Smith*, 539 U.S. 510, 528, 123 S. Ct. 2527, 156 L. Ed. 2d

471 (2003). "This presumption of correctness also applies to factual findings made by a state court of review based on the trial record." *Morgan*, 662 F.3d at 797-98 (citing, inter alia, *Sumner v. Mata*, 449 U.S. 539, 546-47, 101 S. Ct. 764, 66 L. Ed. 2d 722 (1981)). Here, Eddmonds does not present clear and convincing evidence to upset any of the facts set forth by the Illinois Appellate Court on direct review. *See United States ex. rel. Sprinkle v. Dawson*, No. 12 C 0288, 2012 WL 1985896, at *2 (N.D. Ill. June 4, 2012) (citing 28 U.S.C. § 2254(e)(1)). Accordingly, for purposes of this federal habeas proceeding, the Court adopts the statement of facts set forth in the June 22, 2001 decision of the Illinois Appellate Court.

On August 11, 1995, Chicago Police Detectives Schorsch and Gildea arrested Petitioner Ronald Eddmonds in connection with the July 28, 1995 shooting death of Dwayne Green on West Sunnyside Street in Chicago, Illinois. (R. 26, Ex. B, *People v. Eddmons*, No. 1:98-2927, at 2 (Ill. App. Ct. June 22, 2001).) The police made the arrest "after receiving information regarding his presence at the crime scene." (*Id.*) Petitioner initially invoked his rights under the Fifth Amendment, but later made certain statements to law enforcement that were admitted at trial. (*Id.* at 2-7.) Petitioner and others were charged with murder and attempted murder. Prior to trial, Petitioner moved to suppress his post-arrest statements to law enforcement. (R. 25, Ex. A at C37-38.) Following a suppression hearing, the trial court denied the motion. (R. 26, Ex. B.) The Illinois Appellate Court summarized the evidence adduced at trial as follows:

> [Sam] Barksdale stated that in the early evening hours of July 28, 1995, he was in the area of Hazel and Windsor with some members of the Four [C]orner Hustlers and the Vice Lords when he saw Light with Pickett. . . . Barksdale got into a passing car driven by his friend Clifford and proceeded south on Clarendon. At that time, Barksdale saw four guys on bikes riding up to the corner of Clarendon and Sunnyside. Barksdale recognized two of the bicycles as [Petitioner], whom he knew as "Ron Stone," and Jirod Harris. Barksdale stated that [Petitioner] looked into his car and said "VLK" which meant "Vice Lord Killer." [Petitioner]

reached toward his waistband area in a motion that Barksdale knew to mean [Petitioner] had a gun.  Barksdale ducked down and they "drove off real quick" toward Windsor and Hazel to warn people about the approach of "four guys with black hoodies on bikes" that were "Stones."  As they were alerting people, Barksdale heard seven or eight shots coming from the direction of Sunnyside, and when Barksdale reached that street, he saw Light on the ground with blood around him. Pickett was with Light; Barksdale could not recall if Scrappy was present.

On August 12, 1995, Barksdale identified [Petitioner] and Jirod Harris in a police line-up.  Barksdale accompanied police to the scene, where he identified a mountain bike.  Officer Susan Wolverton testified that on July 28, 1995, at approximately 1:55 a.m., she responded to a report of "shots fired" at 918 W. Sunnyside and found Green dead on the sidewalk.  Officer Wolverton had a brief conversation with Pickett and James Carter, and noticed a bike propped up between two cars.  Chicago Police Forensic Investigator Joseph Bemhynista testified that he recovered a spent cartridge case and a fired bullet from the scene.  Bemhynista photographed a bike propped up against a car which contained fingerprints on its handlebars.

Jirod Harris testified that he pled guilty to the murder of Green and received a sentence of 26-years imprisonment.  Harris stated that in July 1995, he was a member of the Black P. Stones gang, and that the gang territory was in the area of Wilson and Dover.  Harris stated that at that time he knew the [Petitioner] as "Ron," but did not know whether [Petitioner] belonged to any gang.  Harris stated that at 1:30 a.m. on July 28, 1995, he rode his bike from Malden and Wilson to Sunnyside and Hazel.  He noticed a female and two males and rode toward them, believing that they did not belong to any gang.  Harris then had an argument with a guy named Scrappy about something that happened the previous week.  Harris stated that "they started talking crazy," and then, after Scrappy and the girl walked off, Harris shot at the other guy, Green, eight or nine times, with a 9 millimeter gun.  Harris then rode his bike back towards Montrose and Magnolia and hid the gun in a park under some wood chunks later disposing of the gun in a dumpster.

Harris further testified that prior to entering his guilty plea in this case, he gave a statement to ASA O'Neill . . . that he "bought a nine millimeter gun from a hype on the street," so the Blackstones would have a gun for that area, [which was] necessary, Harris stated, because there were Vice Lords in the area and the two gangs were fighting.  Harris stated that the serial number had been scraped off the gun, and that there was one bullet in the chamber and eight in the clip.  Harris stated that the bullets were marked "Win" for Winchester.  Harris further stated that he bought the gun for three bags of "rock," put it in his belt, and went to find his brother at Magnolia and Montrose.

Harris' statement further revealed that [Petitioner] was a "P-Stone," and that [Petitioner] was a "Mufti," meaning that he was second in command for the gang. On the night of the shooting, Harris stated, he and [Petitioner] picked up Harris' brother Shonta and an individual named Milton, and they all rode their bikes up to Clarendon to sell "packs." They stopped at the corner of Clarendon and Sunnyside and saw Vice Lords in an approaching car. Defendant pulled his shirt up to show his guns, then said, "let's go," and rode west on Sunnyside toward Hazel. Once there, [Petitioner] pulled out his gun and was about to shoot Vice Lords standing on the street, but said "come on let's go," because there were too many Vice Lords. They continued riding up Sunnyside and saw two guys and a girl. Harris stated that he took out his gun and fired at the individuals three times, [Petitioner] then took the gun from Harris and fired five more times until the clip was empty, and then returned the gun to Harris who put it in his pocket. Harris stated that [Petitioner]'s bike would not move, and so the two rode on Harris' bike to Magnolia and Montrose where [Petitioner] descended. Harris stated that he hid the gun in a park, after his brother refused to get rid of the gun. Harris admitted initialing changes made to the statement by the prosecutor.

Chicago Police Officer William Kovacs, a latent fingerprint examiner, testified that he examined two latent prints lifted from the bicycle at the crime scene and determined that the prints matched an individual known as "Corey Lowe," an alias of [Petitioner]. Chicago Police Detective James Gildea testified that he examined two latent prints lifted from the bicycle at the crime scene and determined that the prints matched an individual known as "Corey Lowe," an alias of [Petitioner].

Chicago Police Detective James Gildea testified that he accompanied Detective Schorsch to the Skokie courthouse to arrest [Petitioner] on August 11, 1995. Detective Gildea testified consistent with his pre-trial testimony regarding [Petitioner's lawyer] Bischoff's admonitions to [Petitioner] not to make any statements outside of his presence. Gildea similarly confirmed his prior testimony and that of Schorsch that the detectives did not question [Petitioner] en route to Area 3, and that the detectives reminded [Petitioner] that his attorney advised him not to make any statements after [Petitioner] told the detectives that he did not want to shoot anybody and that he wanted to tell them what happened.

Detective Gildea stated that [Petitioner] insisted that he did not need his attorney because he did not shoot anybody. Detective Gildea stated that Detective Schorsch advised [Petitioner] of his *Miranda* rights and then asked [Petitioner] what he knew about the shooting. Detective Gildea testified that [Petitioner] made the following statement:

[Petitioner] stated that he was present on Sunnyside and Hazel when Green was shot and that he was armed with a brown-handled, .32 caliber Beretta pistol,

containing seven rounds of ammunition in the clip and one in the chamber. [Petitioner] carried the gun in the waistband of his pants. [Petitioner] stated that he was a member of the "P-Stone" gang and had accompanied several other members of the gang to the location of the shooting. [Petitioner] named the other participants as Harris, Dumar and Melvin. [Petitioner] stated that he and Harris rode their own bikes and that Dumar and Melvin rode on the same bike. [Petitioner] stated that he and Harris possessed crack cocaine and intended to sell the substance. [Petitioner] stated that Harris was armed with a nine millimeter pistol, and that the gun belonged to the "Nation," which meant that the gun belonged to the P-Stone gang. [Petitioner] stated that as they rode their bikes to the area of the shooting a blue, four-door car approached them, occupied by several young, black males, that the car slowed down, and that the occupants looked at them "very hard." In response, [Petitioner] stated that he stopped his bike, stood up on it, raised his shirt to display the fact that he was armed, and the car drove away.

[Petitioner] further stated that as he and the others on bikes reached Hazel, they saw a female and two males walking and he recognized the two males as Vice Lords, Scrappy and Light.

[Petitioner] stated that Harris was going to shoot them, but [Petitioner] told Harris that they were Vice Lords and they were "cool." Harris nevertheless pulled out his pistol and aimed it at the three people. [Petitioner] stated that he also pulled out his pistol and aimed it because he "had to back his buddy's play." [Petitioner] stated that Harris started firing and that [petitioner] attempted to fire his own weapon, but that it did not discharge and so he dropped it and attempted to flee on his bicycle. However, [Petitioner]'s bicycle also failed to operate, and [Petitioner] fled on foot.

. . . Detective Ray Camiski testified that he conducted a police line-up on August 12, 1995, where Sam Barksdale identified [Petitioner] as the person on the bike whom he saw reach behind his back as though he were getting a gun, one or two minutes before the shooting began. Detective Camiski stated that Barksdale also identified Jirod Harris and Shonta Harris.

ASA O'Neill testified that on August 12, 1995, she began her interview with [Petitioner] by inquiring whether he began a conversation with the officers about the shooting of Green. [Petitioner] stated that he did in fact initiate the conversation with police. ASA O'Neill stated that [Petitioner] also told her that he wanted to speak to her without his attorney present, and signed a document to that effect and waiving his *Miranda* rights.

O'Neill testified that [Petitioner] . . . admitted being at the scene of the shooting along with Jirod Harris, Milton Washington, and Shonta Harris. [Petitioner]

further admitted that he was a member of the "P-Stones," that he had a .32 caliber Beretta automatic weapon, and that Harris had a nine millimeter gun. [Petitioner] further stated that Harris pulled out his gun and shot at the two males and the female, and that [Petitioner] pulled out his gun and pointed it at the group, but did not fire his weapon.

(*Id.* at 2-13.)

Following deliberations, the jury found Petitioner not guilty of attempted first degree murder but not guilty of first degree murder. (*Id.* at 13.) The trial judge sentenced Petitioner to fifty years of imprisonment. (*Id.*)

## II.     State Appellate and Post-Conviction Proceedings

### A.     Direct Appeal

Petitioner timely appealed his conviction and sentence to the Illinois Appellate Court, raising nine grounds for relief:

1.     the trial judge improperly conducted parts of the trial in defense counsel's absence;
2.     the trial judge engaged in ex parte communications with the jury;
3.     the trial court erred in failing to clarify an instruction about which the jury was confused;
4.     the trial court erred in denying Petitioner's motion to suppress where police comments to Petitioner were reasonably likely to elicit an incriminating response;
5.     Petitioner was denied a fair trial by the prosecution's comments in closing argument that wrongly focused on the prosecutor's purported credibility;
6.     Petitioner was denied a fair trial by the prosecution's comments in closing argument that misstated the law and distorted the burden of proof;
7.     Petitioner was denied a fair trial by the admission of highly inflammatory but non-probative autopsy photographs;
8.     Petitioner was not proven guilty beyond a reasonable doubt; and
9.     the trial judge demonstrated bias against Petitioner by making several hostile remarks to defense counsel.

(R. 26, Ex. C at 1-7.) On June 22, 2001, the state appellate court affirmed. (*Id.*, Ex. B, *State v. Eddmonds*, No. 1-98-2927 (Ill. App. Ct. June 22, 2001).) Petitioner thereafter filed a petition for leave to appeal in the Illinois Supreme Court, raising six claims:

1.　　defense counsel was not present in court during proceedings regarding a question from the jury concerning one of its instructions and the judge's response thereto;

2.　　the judge failed to clarify a jury instruction about which the jury expressed confusion;

3.　　the judge failed to suppress Petitioner's statements, which were the result of remarks from police officers likely to elicit an incriminating response;

4.　　the State improperly bolstered its case in closing argument by wrongly praising the prosecutor's credibility;

5.　　the State's closing argument misstated the law and distorted the burden of proof; and

6.　　the trial court allowed the admission of highly inflammatory but non-probative autopsy photographs.

(*Id.*, Ex. F, Petition, *People v. Eddmonds*, No. 92760.)  The state high court denied the petition on February 6, 2002.  (*Id.*, Ex. G, Order, *People v. Eddmonds*, No. 92760 (Ill. Sup. Ct. Feb. 6, 2002).)

**B.　　State Post-Conviction Proceedings**

On March 13, 2001, Petitioner filed a pro se petition for post-conviction relief in the Circuit Court of Cook County, Illinois, pursuant to 725 ILCS 5/122-1, raising eight claims:

1.　　Petitioner was not proven guilty beyond a reasonable doubt, and appellate counsel was ineffective for failing to challenge the sufficiency of the evidence on direct appeal;

2.　　Petitioner was subjected to an unreasonable arrest without a warrant or probable cause; trial counsel was ineffective for failing to file a motion to quash the arrest and suppress the statements Petitioner made after being arrested; and appellate counsel was ineffective for failing to raise these issues on direct appeal;

3.　　Petitioner's Fifth Amendment rights were violated when the police elicited a statement from him after he told them that he did not wish to speak with them without his lawyer present; trial counsel was ineffective for failing to file a motion to suppress Petitioner's statements on this basis; and appellate counsel was ineffective for failing to raise these issues on direct appeal;

4.　　the prosecutor who took Petitioner's custodial statement violated her ethical obligations by speaking to Petitioner without the consent of Petitioner's lawyer; trial counsel was ineffective for failing to move to suppress Petitioner's statements on this basis; and appellate counsel was ineffective for failing to raise this issue on direct appeal;

5.　　the State made improper remarks in its closing argument that deprived Petitioner

of a fair trial; trial counsel was ineffective for failing to object at trial to these improper comments; and appellate counsel was ineffective for failing to invoke the plain error doctrine or argue that trial counsel's ineffectiveness in failing to make proper objections should excuse the forfeiture of this issue;

6.      Petitioner was denied his right to call witnesses on his behalf, and appellate counsel was ineffective for failing to raise this issue on direct appeal;

7.      trial counsel was ineffective for failing to produce eyewitnesses, and appellate counsel was ineffective for failing to raise this issue on direct appeal; and

8.      Petitioner's constitutional rights were violated by the legally inconsistent verdicts finding him guilty of murder but not guilty of attempted murder, and appellate counsel was ineffective for failing to raise this issue on direct appeal.

(*Id.*, Ex. H at C19-105, Petition, *People v. Eddmonds*, No. 95-CR-25382.) After the State moved to dismiss (*id.* at C106-11), the Circuit Court appointed counsel to represent Petitioner, and counsel filed a response to the motion. (*Id.* at C139-45.) Petitioner additionally filed a pro se response to the motion stating that he "wishes to WITHDRAW issues ONE, SIX, SEVEN, and EIGHT of his post-conviction [sic] and wishes to proceed with issues TWO, THREE, FOUR, and FIVE of the petition[.]" (*Id.* at C156.)

Thereafter, on October 14, 2008, counsel filed a certification pursuant to Illinois Supreme Court Rule 651(c), attesting that the pro se petition adequately presented Petitioner's issues and that no supplemental petition would be necessary. (*Id.*, Ex. H at C139-43.) On August 27, 2009, the Circuit Court dismissed the petition, concluding that Petitioner had failed to make a substantial showing of the denial of a constitutional right at trial or on direct appeal. (*Id.* at C176-86, *People v. Eddmonds*, No. 95-CR-25382 (Ill. Cir. Ct. Aug. 27, 2009).)

Petitioner, through counsel, appealed to the Illinois Appellate Court, raising three claims:

1.      postconviction counsel provided unreasonable assistance under Illinois Supreme Court Rule 651(c) by failing to amend or supplement Petitioner's pro se postconviction petition;

2.      the mittimus should be corrected to show a conviction for only one count of

murder; and

3.   Petitioner is entitled to an additional two days of sentencing credit for time served in jail.

(*Id.*, Ex. I at 1-5.)  The appellate court corrected the mittimus and sentencing calculation, but otherwise affirmed the Circuit Court's dismissal of the petition.  (*Id.*, Ex. L, *People v. Eddmonds*, No. 1-09-2660 (Ill. App. Ct. May 6, 2011).)  Petitioner then sought leave to appeal in the Illinois Supreme Court, arguing that the appellate court erred "by rejecting the Petitioner's contentions that [p]ost-conviction [c]ounsel provided unreasonable assistance in violation of the third requirement of Rule 651(c) by failing to amend Petitioner's post-conviction petition to adequately present his claim that Trial Counsel was ineffective for failing to file a motion to quash arrest."  (*Id.*, Ex. M at 2-3.)  The high court denied leave to appeal.  (*Id.*, Ex. N, Order, *People v. Eddmonds*, No. 112510 (Ill. Sept. 28, 2011).)

### C.     Motion to "Vacate Void Judgement"

Meanwhile, on February 1, 2011, Petitioner filed a pro se motion in the Circuit Court of Cook County, Illinois, "to vacate void judgement."  (*Id.*, Ex. O at C25.)  In that motion, Petitioner sought relief under myriad constitutional provisions on the apparent basis that 725 ILCS 5/109(a) (arrest without warrant; arraignment without unnecessary delay), is unconstitutional.  (*Id.* at C26.)  The Circuit Court denied the motion, and the matter is still pending in the Illinois courts.  (*Id.* at C44-46.)

### III.    Federal Habeas Proceedings

On December 5, 2011, Petitioner, proceeding pro se, filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254.  (R. 1, Petition.)  Petitioner raises seven claims for relief:

> Claim One: The trial court conducted parts of the trial in defense counsel's absence;
>
> Claim Two: The trial court erred in failing to clarify an instruction about which the jury was confused;
>
> Claim Three: The trial court erred in denying Petitioner's motion to suppress statements;
>
> Claim Four: Petitioner was denied a fair trial by comments by state arguments which wrongly focused upon the prosecutor's purported credibility;
>
> Claim Five: Petitioner was denied a fair trial by the prosecutor's arguments which misstated law and distorted the burden of proof;
>
> Claim Six: Petitioner was denied a fair trial by the admission into evidence of highly inflammatory but non-probative autopsy photographs; and
>
> Claim Seven: Petitioner was arrested without probable cause and has yet to receive a full and fair hearing on said issue, where he was arrested without probable cause; trial counsel was ineffective for failing to move to quash Petitioner's arrest on the ground that there was no probable cause; appellate counsel was ineffective for failing to raise this issue on direct appeal; and postconviction counsel failed to provide reasonable assistance by providing evidentiary support to adequately present Petitioner's claim that trial counsel was ineffective for failing to move to quash petitioner's arrest.

(*Id*. at 5-13.) Respondent answered on May 23, 2012 (R. 25), and Petitioner replied on July 10, 2012. (R. 29.)

## LEGAL STANDARD

The Court reviews the present petition for a writ of habeas corpus pursuant to the standards set forth in 28 U.S.C. §§ 2241 and 2254. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1218, codified at 28 U.S.C. § 2254, the "successful petitioner" must "demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the United States,'" *Brown v. Watters*, 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)), but also must satisfy a complex and highly deferential

standard, codified at 28 U.S.C. §§ 2254(b)-(e), that the Supreme Court has described as "difficult to meet." *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 786-87, 78 L. Ed. 2d 624 (2011).

Section 2254(b) imposes a requirement of exhaustion, namely that a petitioner must "first attempt to present his claim in state court." *Id.* at 787. This means that the petitioner must fully and fairly present his federal claims through one full round of state court review before filing a federal habeas petition. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845-48, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Gray v. Hardy,* 598 F.3d 324, 327 (7th Cir. 2010). The purpose of the exhaustion requirement is to provide the state with an "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Cheeks v. Gaetz,* 571 F.3d 680, 685 (7th Cir. 2009) (internal citations and quotation marks omitted).

Even if a petitioner otherwise exhausts his state court remedies, AEDPA imposes significant additional obstacles to federal habeas relief. *See Harrington*, 131 S. Ct. at 786. First, if the state court "reject[ed] the claim on procedural grounds" during the state appellate review process, then the claim will be "barred in federal court" on the basis of procedural default. *Id.*; *see also Cone v. Bell*, 556 U.S. 449, 465, 129 S. Ct. 1769, 173 L. Ed. 2d 701 (2009) ("[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review."). A habeas petitioner may overcome procedural default only by demonstrating cause for and actual prejudice from the default, *see House v. Bell,* 547 U.S. 518, 536, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006), or by establishing that failure to consider the claim would result in a fundamental miscarriage of justice, such as the "conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L.

Ed. 2d 397 (1986).

Second, if the state court has adjudicated the habeas petitioner's federal claim on the merits, the claim is still barred in federal court unless the petitioner can satisfy either of the two exceptions to the claim bar of § 2254(d). *See Harrington*, 131 S. Ct. at 786. Under § 2254(d), commonly referred to as AEDPA's "relitigation bar," a petition for writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §§ 2254(d)(1), (2); *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-1401, 179 L. Ed. 2d 557 (2011) (holding that the evidentiary record in a § 2254(d)(1) proceeding is "limited to the record that was before the state court that adjudicated the claim on the merits"); *Williams*, 529 U.S. at 402-03.

With regard to § 2254(d)(1), "clearly established federal law" refers to the law at the time of the last state court adjudication on the merits. *See Greene v. Fisher*, 565 U.S. ___, 132 S. Ct. 38, 43-44, 181 L. Ed. 2d 336 (2011); *Cullen*, 131 S. Ct. at 1398 (noting that AEDPA uses "backward-looking language"). The Supreme Court has explained that a state court decision is "contrary to . . . clearly established federal law" if it "contradicts the governing law set forth in our cases," or "the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."

*Williams*, 529 U.S. at 405-06.

A state court decision involves an "unreasonable application of . . . clearly established federal law" if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," *id.* at 407-08, "but not when the state court merely applies federal law 'erroneously or incorrectly.'" *Collins v. Gaetz*, 612 F.3d 574, 585 (7th Cir. 2010) (quoting *Williams*, 529 U.S. at 411); *see also Morgan*, 662 F.3d at 797 (noting that the inquiry is objective, and "a state court's decision is objectively unreasonable if it falls well outside the boundaries of permissible differences of opinion") (internal citation and quotation marks omitted).

## ANALYSIS

In his habeas petition, Petitioner presents seven independent claims for relief. The Court addresses each of these claims below.

## I.    Claims One and Two

Claims One and Two relate to the trial court's response to a jury note regarding an instruction during deliberations.

### A.    Relevant Background

After the close of evidence, the trial court instructed the jury, consistent with the Illinois Pattern Criminal Jury Instructions, that:

> A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of an offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of an offense. The word "conduct" includes any criminal act done in furtherance of the planned and intended act.

(R. 25, Exs. A-1 at C124 & A-5 at E-256); *accord* Illinois Pattern Crim. Jury Instruction 5.03

(accountability). During deliberations, the jury sent the following question to the trial judge:

> Judge – Does the presence of an individual during the commission of an offense by another, when both parties intend to commit the offense, mean the individual is legally responsible for the conduct of the other person? Thank you. [Signed]

(*Id.*, Exs. A-1 at C102 & A-5 at F-3.) The trial judge "consulted with defense counsel" on the telephone. (R. 25, Ex. A-5 at F-2.) Defense counsel initially suggested that the trial judge answer the question by saying 'no,' [but] then revised [his] response, telling the trial judge to answer by telling the jury 'they have the instructions.'" (*Id.*, Ex. A at F-2-3; R. 26, Ex. B at 20.) The prosecutor agreed with this suggestion. (R. 25, Ex. A-5 at F-3; R. 26, Ex. B at 20.) Consistent with the parties' suggestion, the trial judge answered the jury's question by restating the original instruction, and advising the jury to continue deliberating. (*Id.*, Ex. A-5 at F-2-4; R. 26, Ex. B at 18-21.)

## B. Claim One

In Claim One, Petitioner argues that the trial court violated his constitutional rights because defense counsel was not present when (1) "the Judge asked the prosecutor for the State's position"; (2) " the State gave the Judge its proposed response;" and (3) "the Judge sent back to the jury a response" to the question. (R. 1, Petition at 5.) Petitioner concludes that due "to the highly prejudicial nature of the way the Court abused its discretion," the Court should reverse his conviction and remand his case for a new trial. (*Id.* at 5-6.)

The Illinois Appellate Court adjudicated this claim on the merits within the meaning of 28 U.S.C. § 2254(d). (R. 26, Ex. B, Order, *People v. Eddmons*, No. 1-98-2927, at 16-20.) As explained below, that adjudication neither "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; [n]or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

Petitioner does not contest any state court factual finding, nor does his petition cite to any clearly established federal law in support of his claim. *See* 28 U.S.C. §§ 2254(d)(1), (2). To the extent Petitioner's claim sounds in due process, *see Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004) (ex parte communications may implicate due process), Petitioner's claim fails because, as the Illinois Appellate Court reasonably concluded, he cannot show prejudice or that any improper communications rendered his trial fundamentally unfair. (R. 25, Answer at 38-42; *see also* R. 26, Ex. B at 19.) *See Jones v. Briley*, 49 Fed. App'x 623, 625 (7th Cir. 2002) ("[The Supreme] Court has explicitly declared that ex parte communications are trial errors subject to harmless-error analysis.").

The Illinois Appellate Court found that the trial judge consulted with defense counsel on the record in response to the jury's question. Defense counsel, along with the prosecutor, agreed that the judge should simply refer the jury back to the original instruction. This is precisely the procedure that the trial judge followed. *See Moore,* 368 F.3d at 940 (holding in the context of an *ex parte* communication between the judge and jury that "we look to see if the communications had a prejudicial effect on the defendant and rendered the trial 'fundamentally unfair'") (discussing Supreme Court case law). The Illinois Appellate Court's finding of no prejudice was reasonable, and Petitioner points to no clearly established Supreme Court precedent to suggest otherwise. For all of these reasons, Petitioner has not established his entitlement to relief on

Claim One.[1]

### C.    Claim Two

In Claim Two, Petitioner argues that the trial judge "abused his discretion by merely

giving the jury back the same instruction which was the source of their confusion." (R. 1,

Petition at 6.) The state appellate court on direct appeal rejected this claim on the merits, and its

decision was neither contrary to, nor an unreasonable application of, clearly established federal

law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). Petitioner

does not cite to any such clearly established federal law in his petition, nor does he even identify

the constitutional basis of his claim. *See Crockett v. Hulick*, 542 F.3d 1183, 1190 (7th Cir. 2008)

(denying habeas relief, where petitioner "does not attempt to cite any case that would show an

unreasonable application of federal law as established by the Supreme Court").

To the extent Petitioner seeks to bring a federal constitutional claim, he makes no

argument that the underlying pattern jury instruction was constitutionally defective, nor that the

United States Constitution required the trial judge to modify the state pattern instruction in

---

[1] In reply, Petitioner raises a new claim – that he was denied his Sixth Amendment right to counsel at a critical stage of the proceedings and thus need not show prejudice. (R. 29, Pet.'s Reply at 2 (citing *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).) Not only has Petitioner waived this argument by not raising it in his petition, *see Gonzales v. Mize*, 565 F.3d 373, 382 (7th Cir. 2009) (habeas), but the argument is unpersuasive in this federal habeas proceeding. The Illinois Appellate Court concluded that "no party was improperly excluded from a critical decision making process affecting defendant's rights," (R. 26, Ex. B at 19), and Petitioner offers no clearly established federal law to call this conclusion into question. *See United States v. Jubiel*, 377 Fed. App'x 925, 935 (11th Cir. 2010) ("We have not previously addressed the question of whether the consideration of a jury note is a critical stage of a trial per se, and we need not resolve the issue here."); *Siverson v. O'Leary*, 765 F.2d 1208, 1218 n.6 (7th Cir. 1985) (noting that "counsel's voluntary absence during jury deliberations and the return of the verdicts" is subject to harmless error analysis). That defense counsel may have appeared by phone does not change the constitutional calculus. *See Wright v. Van Patten*, 552 U.S. 120, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008).

response to the jury's question.[2]  *Cf. Weeks v. Angelone*, 528 U.S. 225, 234, 120 S. Ct. 727, 145 L. Ed. 2d 727 (2000) ("Given that petitioner's jury was adequately instructed, and given that the trial judge responded to the jury's question by directing its attention to the precise paragraph of the constitutionally adequate instruction that answers its inquiry, the question becomes whether the Constitution requires anything more.  We hold that it does not."); *United States ex. rel. Rodgers v. McVicar*, No. 95 C 7024, 2001 WL 1012590, at *7 (N.D. Ill. Sept. 5, 2001) (citing, inter alia, *United States v. Hamann*, 688 F.2d 507, 509-10 (7th Cir. 1982) (holding that trial court properly reread instruction on "intent to defraud," following jury note advising that: "What the term 'intent' means seems to be the problem").)

For all of these reasons, Petitioner has not established his entitlement to relief on Claim Two.

## II.     Claim Three

In Claim Three, Petitioner argues that the trial court erred in denying his motion to suppress Petitioner's post-arrest statements, in violation of the Fifth Amendment.  (R. 1, Petition at 6).  Petitioner invoked his Fifth Amendment rights immediately following his arrest.  (R. 25, Ex. A-6 at 100.)  The police transported Petitioner to the police station for questioning, and Petitioner soon thereafter made statements to law enforcement that the trial court subsequently admitted at trial.  Petitioner moved before trial to suppress his statements.  Following a

---

[2]  Petitioner argues in reply that the trial court breached its "duty" to clarify the initial instruction.  (R. 27, Pet. Reply at 3 (citing *People v. Oden*, 261 Ill. App. 3d 41, 199 Ill. Dec. 394, 633 N.E.2d 1385 (Ill. App. Ct. 1994).)  Petitioner predicates this argument on the breach of a state law duty, and as such, his argument is unavailing in this federal habeas proceeding.  *See* 28 U.S.C. §§ 2241, 2254(a); *Wilson v. Corcoran*, 562 U.S. ___, 131 S. Ct. 13, 16, 178 L. Ed. 2d 276 (2010) ("[W]e have repeatedly held that federal habeas corpus relief does not lie for errors of state law.") (internal quotation marks and citation omitted).

suppression hearing, the trial court denied the motion on the basis that Petitioner reinitiated contact with the officers and waived his rights. (R. 26, Ex. B at 14.) The Illinois Appellate Court affirmed, and its resolution is an adjudication on the merits within the meaning of § 2254(d). (*Id.* at 15.)

The Fifth Amendment provides that "no person shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To protect this privilege against self-incrimination, the Supreme Court held in *Miranda v. Arizona* that "a suspect must be informed of, and voluntarily waive" his Fifth Amendment rights, including the right to counsel and to remain silent, "being subjected to custodial interrogation." *United States v. Robinson*, 586 F.3d 540, 545 (7th Cir. 2009) (citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)). Once a suspect invokes his Fifth Amendment rights, "all interrogation of the suspect must cease 'until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.'" *Robinson*, 586 F.3d at 545 (quoting *Oregon v. Bradshaw*, 462 U.S. 1039, 1046, 103 S. Ct. 2830, 77 L. Ed. 2d 405 (1983)). "By itself, a suspect's initiation of conversation does not necessarily constitute a waiver . . . ; the suspect's waiver must also be knowing and voluntary, under the totality of the circumstances, before law enforcement agents engage in any interrogation." *Robinson*, 586 F.3d at 545 (citing *Edwards v. Arizona*, 451 U.S. 477, 486 n.9, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981) (waiver depends on the "totality of the circumstances")).

Petitioner now seeks habeas relief, arguing that the police officers "trick[ed] him" into "giving up his rights to remain silent." (R. 1, Petition at 7.) According to Petitioner, the officers accomplished this by "confront[ing]" him with a "barrage of evidence that was designed to elicit

an incriminating response," including "falsely" telling Petitioner that he "had been named as one of the persons involved." (*Id*.) Because the Illinois Appellant Court identified the correct legal standard in rejecting this argument on direct appeal, the question under AEDPA is whether its decision was objectively reasonable in light of Supreme Court precedent. *See* 28 U.S.C. §§ 2254(d)(1), (2); *Collins v. Gaetz*, 612 F.3d 574, 585 (7th Cir. 2010) (citing *Williams*, 529 U.S. at 411). The Court concludes that it was.

First, the state appellate court reasonably concluded that Petitioner's comments to the police officers were adequate under *Edwards* and *Bradshaw* to constitute re-initiation after waiver. As the Illinois Appellate Court found, Petitioner asked the officers where they were taking him, and after the officers said to a "lockup" and "lineup," Petitioner then asked "what for," to which the officers responded by telling him that he had been named as a suspect in the shooting and that they found his fingerprints on a bicycle at the scene. (*Id.* at 2-6, 15.) Petitioner asserted his innocence, and the officers reminded him at least twice of his *Miranda* rights. (*Id.*) Petitioner "insisted he did not want an attorney" and, despite admonitions, made statements to the police. (*Id.*) Petitioner points to no Supreme Court precedent to suggest, based on the totality of the record, that the state court's finding of re-initiation was unreasonable. *Cf. Robinson*, 586 F.3d at 545 ("There is no doubt that . . . [the defendant's] unprompted question, 'What do you want?' was sufficient under *Edwards* to initiate a conversation.") (citing *Bradshaw*, 462 U.S. at 1045 (upholding a finding of initiation where defendant had asked, "Well, what is going to happen to me now?")).

Second, the state court reasonably concluded, based on the totality of the evidence, that Petitioner knowingly, intelligently, and voluntarily waived his Fifth Amendment rights. *See*

*Robinson*, 586 F.3d at 546-47.  Detective Schorsch testified that after Petitioner appeared to be re-initiating contact, the officers "advised [him] of his rights and told that his attorney was at the Skokie courthouse and that [the attorney] advised [Petitioner] not to talk with the police."  (R. 26, Ex. B at 2-6.)  Petitioner disregarded this warning, and the officers once again advised him that his lawyer suggested he not speak to the police.  (*Id.*)  The prosecutor the next day also advised Petitioner of his rights.  (*Id.*)  The state trial court found the state's witnesses to be credible, and remarked that Petitioner's own testimony at the suppression hearing was  "the most incredible and unbelievable testimony that I've heard in a very long time."  (R. 25, Ex. A-6 at 100-05.)  Despite Petitioner's claims of "trickery," the officers' statements regarding the fingerprints and the Petitioner's status as a suspect are supported by the record, to the extent they are even cognizable.  *See Allen v. Buss*, 558 F.3d 657, 668 (7th Cir. 2009).

Viewed in light of the totality of the state court record, the state court's rejection of Petitioner's Fifth Amendment challenge was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Parker v. Matthews*, 567 U.S. ___, 132 S. Ct. 2148, 2155 (2012) (per curiam) (quoting *Harrington*, 131 S. Ct. at 786-87).

## III.    Claims Four and Five

Claims Four and Five are related to the prosecutor's closing arguments at trial.  In Claim Four, Petitioner argues that "he was denied a fair trial by state arguments which wrongly focused upon the prosecutor's purported credibility."  (R. 1, Petition at 7.)  In Claim Five, Petitioner argues that "he was denied a fair trial by the prosecutor's arguments which misstated and

distorted the burden of proof."  (*Id.* at 8.)  The Court will construe this as a due process claim.[3] *See United States v. Moore*, 641 F.3d 812, 818-19 (7th Cir. 2011).

Petitioner raised these claims on direct appeal to the Illinois Appellate Court, which concluded that Petitioner had "waived these issues for review" because he "failed to object to [the prosecutor's] comments at trial."  (R. 26-3, Ex. B at 23); *see also People v. Enoch*, 122 Ill.2d 176, 186, 119 Ill. Dec. 265, 522 N.E.2d 1124 (1988) ("Both a trial objection and a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial.").  As such, Respondent contends that the claims are procedurally defaulted because the state court rejected the claims on "a state-law ground that 'is independent of the federal question and adequate to support the judgment."  (R. 25, Answer at 24 (quoting *Cone*, 556 U.S. at 465).)  The Court agrees.  *See Dressler v. McCaughtry*, 238 F.3d 908, 913 (7th Cir. 2001).

"Under Illinois law, in order to preserve an issue for appeal, a party must make a contemporaneous objection to the error at trial and file a written post-trial motion raising the error."  *Jenkins v. Nelson*, 157 F.3d 485, 491 (7th Cir. 1998) (citing *Enoch*, 122 Ill.2d at 186).  It is well settled that so long as the state court "'clearly and expressly' states that its judgment rests on a state procedural bar," such as the contemporaneous objection rule, the claim is procedurally defaulted for purposes of federal habeas review.  *Jenkins*, 157 F.3d at 491 (quoting *Harris v. Reed*, 489 U.S. 255, 261, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989)); *see also Wainright v. Sykes*, 433 U.S. 72, 89, 97 S. Ct. 2479, 53 L. Ed. 2d 594 (1977) ("A contemporaneous objection

---

[3]  To the extent Petitioner seeks relief on the basis of errors of state evidence law, that claim is not cognizable in federal habeas.  *See Corcoran*, 131 S. Ct. at 16 ("[W]e have repeatedly held that federal habeas corpus relief does not lie for errors of state law.") (internal quotation marks and citation omitted).

enables the record to be made with respect to the constitutional claim when the recollections of witnesses are freshest, not years later in a federal habeas proceeding. It enables the judge who observed the demeanor of those witnesses to make the factual determinations necessary for properly deciding the federal constitutional question.").

Here, despite Petitioner's argument that the prosecutor's comments deprived him of a fair trial, his claims are procedurally defaulted. Petitioner did not object at trial to the prosecutor's closing arguments, and the Illinois Appellate Court, citing *People v. Enoch*, concluded that Petitioner thus "waived" his objection to the arguments on appeal. (R. 26, Ex. B at 23.) In so concluding, the Illinois Appellate Court clearly and expressly invoked and based its decision on the contemporaneous objection rule. Because this is an independent and adequate state law ground for the court's decision, Petitioner's collateral attack on the prosecutor's closing arguments is procedurally defaulted. *See Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005). Petitioner has "made no 'showing of cause and prejudice for the default,' nor has he made 'a showing that a failure to grant him relief would work a fundamental miscarriage of justice.'" *Allen*, 558 F.3d at 666 n.6 (quoting *Thomas v. McCaughtry*, 201 F.3d 995, 999 (7th Cir. 2000)).

Accordingly, Petitioner has not established his entitlement to relief on Claims Four and Five.

## IV.    Claim Six

In Claim Six, Petitioner argues that he is entitled to relief on the basis that "he was denied a fair trial by the admission of highly inflammatory but non-probative autopsy photographs." (R. 1, Petition at 9.) The State responds that this claim is either procedurally defaulted or not cognizable. (R. 25, Answer at 27.) The Court agrees.

Although Petitioner does not identify a constitutional basis of his claim, to the extent he argues that the admission of this evidence violated his federal rights, that claim is procedurally defaulted. Petitioner did not allege a federal constitutional violation on direct appeal. (R. 26, Ex. C at 47-49 (arguing abuse of discretion under state evidence law); *see also Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001). Even if not defaulted, the claim nonetheless lacks merit. *See Gonzales v. DeTella*, 127 F.3d 619, 621 (7th Cir. 1997) ("the admission of 'gruesome' photos of the decedent in a murder case does not justify collateral relief, even when the evidence is cumulative and likely designed more to inflame the jury than to supply an essential underpinning of the prosecution's case"). Furthermore, to the extent Petitioner now presents his claim as an error of state law, that claim is not cognizable on federal habeas review. *See* 28 U.S.C. §§ 2241, 2254(a); *Corcoran*, 131 S. Ct. at 16 ("[W]e have repeatedly held that federal habeas corpus relief does not lie for errors of state law.") (internal quotation marks and citation omitted).

Accordingly, Petitioner has not established his entitlement to relief on Claim Six.

## V.     Claim Seven

In Claim Seven, Petitioner argues that he is entitled to relief on the basis that he

was arrested without probable cause and has yet to receive a full and fair hearing on said issue, where; trial counsel was ineffective for not filing a motion in support of said issue, where; appellate counsel was ineffective for failing to properly raise said issue on direct appeal, where; post-conviction counsel failed to provide reasonable assistance by providing evidentiary support for Petitioner's petition to adequately present his claim in compliance with Illinois Supreme Court Rule 651(c), where; the court errored [sic] in finding that the record showed that probable cause existed to arrest the Petitioner.

(R. 1, Petition at 10.) The Court will consider each of these issues separately.

First, Petitioner claims that "was arrested without probable cause and has yet to receive a

full and fair hearing on said issue." (*Id.*) As to the issue of probable cause, a challenge to that determination is not cognizable on federal habeas, and to the extent Petitioner alleges that he has not had a hearing on the issue, he "does not suggest that his ability to raise this claim was frustrated in any way." *United States ex rel. Anderson v. Hardy*, 779 F. Supp. 2d 816 (N.D. Ill. 2011) (citing *United States ex rel. Bostick v. Peters,* 3 F.3d 1023, 1027 (7th Cir. 1993) ("Of course, the petitioner is not denied an opportunity for full and fair litigation of his claim if he fails to raise and to preserve the claim in state court.")); *see also Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976) ("where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial"); *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010) ("an arrest without probable cause violates the fourth amendment but does not imply the invalidity of a conviction, because courts do not 'suppress the body' of the accused").

Second, Petitioner claims that "trial counsel was ineffective for not filing a motion" to quash his arrest on the basis of lack of probable cause. (R. 1, Petition at 10.) To establish constitutionally ineffective assistance of counsel under the Sixth Amendment, Petitioner must show that (1) counsel's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Respondent contends that Petitioner's claim of ineffective assistance of trial counsel is procedurally defaulted, reasoning that Petitioner on direct appeal abandoned his claim of ineffective assistance and instead pursued a state law claim of unreasonable assistance under

Illinois Supreme Court Rule 651(c).  Respondent may well be correct, but even if not,

Petitioner's claim fails on the merits.  As the Illinois post-conviction court found:

> During the motion to suppress hearing held July 17, 1997 and at trial, the State
> presented unrebutted testimony that when the police arrested the petitioner they
> not only had his fingerprints from the bike found at the scene just feet from the
> victim's body, but they also had multiple positive identification by individuals
> who were at the scene at the time of the murder.

(R. 26, Ex. H at C184, *People v. Eddmons* (Ill. Cir. Ct. Aug. 27, 2009); *see also id.*, Ex. L,

*People v. Eddmons* (Ill. App. Ct. May 6, 2011).)  On that basis, the Illinois courts determined

that Petitioner suffered no prejudice even if counsel should have filed a motion to quash.  This

conclusion was not unreasonable, and indeed Petitioner points to no clearly established federal

law, or portion of the record, that would permit this Court to disturb that conclusion.  *See* 28

U.S.C. § 2254(d)(2).  *Cf. Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93

L. Ed. 1879 (1949) ("In dealing with probable cause, . . . as the very name implies, we deal with

probabilities.  These are not technical; they are the factual and practical considerations of

everyday life on which reasonable and prudent men, not legal technicians, act."); *Scott v. Kelley*,

No. 2010-77, 2012 WL 479896, at *7 n.11 (E.D. Ky. Feb. 14, 2012) (collecting "cases that have

held or indicated that a fingerprint alone constitutes probable cause").

 Third, Petitioner claims that "appellate counsel was ineffective for failing to properly

raise [trial counsel's ineffectiveness] on direct appeal."  (R. 1, Petition at 10.)  The Illinois post-

conviction court rejected this claim on the merits, holding that Petitioner could not show

prejudice because the underlying probable cause claim lacks merit.  (R. 26, Ex. H at C183

("Appellate counsel cannot be found to be ineffective for not raising issues that lack merit.").)

Because Petitioner's ineffective assistance of trial counsel argument lacks merit, "his ineffective

assistance of appellate counsel claim equally has no merit." *Hardy*, 2011 WL 271592, at *9

("[I]t is well-established that appellate attorneys do not have to present losing arguments to

provide constitutionally effective assistance of counsel.") (citing *Whitehead v. Cowan,* 263 F.3d

708, 731 (7th Cir. 2001) ("Appellate lawyers are clearly not incompetent when they refuse to

follow a 'kitchen sink' approach to the issues on appeals.").

Fourth, Petitioner claims that "post-conviction counsel failed to provide reasonable

assistance by providing evidentiary support for Petitioner's petition to adequately present his

claim in compliance with Illinois Supreme Court Rule 651(c)." (R. 1, Petition at 10.) Petitioner

predicates this claim on an error of state law, and as such it is not cognizable. *See Corcoran*, 131

S. Ct. at 16 ("[W]e have repeatedly held that federal habeas corpus relief does not lie for errors

of state law.") (internal quotation marks and citation omitted). In any event, absent exceptions

not applicable here, there is no right to counsel in state post-conviction proceedings. *See*

*Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987).

Finally, Petitioner claims that "the court errored [sic] in finding that the record showed

that probable cause existed to arrest the Petitioner." (R. 1, Petition at 10.) This claim is not

cognizable for the reasons discussed above. (*See supra* pages 23-24.)

## VI.    Leave to Amend

In his reply brief, Petitioner seeks leave to amend his petition to add a claim that the

prosecutor violated the anti-contact rule by speaking with him outside of the presence of counsel.

(R. 29, Reply at 10 (citing ABA Model Rule 4.2 ("In representing a client, a lawyer shall not

communicate about the subject of the representation with a person the lawyer knows to be

represented by another lawyer in the matter, unless the lawyer has the consent of the other

lawyer or is authorized to do so by law or a court order.").)  Breach of the anti-contact rule is not

cognizable on federal habeas review, and the Court therefore denies Petitioner's motion to

amend on the basis of futility.  *See* Fed. R. Civ. P. 15(a)(2); *Indep. Trust Corp. v. Stewart Info.*

*Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012) ("It is well settled that a district court may refuse

leave to amend where amendment would be futile."); *Sullivan v. Ross*, No. 09 C 6961, 2010 WL

1710742 (N.D. Ill. Apr. 26, 2010) (denying leave to amend habeas petition, where the

petitioner's "allegations, by themselves, fail to state a claim for habeas relief").

## VII.    Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254

Proceedings, the "district court must issue or deny a certificate of appealability when it enters a

final order adverse to the applicant."  Accordingly, the Court must determine whether to grant

Petitioner a certificate of appealability as to any of his claims pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner does not have the absolute right to appeal a district court's denial of

his habeas petition, instead, he must first request a certificate of appealability.  *See Miller-El v.*

*Cockrell*, 537 U.S. 322, 335, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003); *Sandoval v.*

*United States*, 574 F.3d 847, 852 (7th Cir. 2009).  A habeas petitioner is entitled to a certificate

of appealability only if he can make a substantial showing of the denial of a constitutional right.

*See* 28 U.S.C. § 2253(c)(2); *Miller-El*, 537 U.S. at 336; *Narvaez v. United States*, 641 F.3d 877,

881 (7th Cir. 2011).  Under this standard, Petitioner must demonstrate that "reasonable jurists

could debate whether (or, for that matter, agree that) the petition should have been resolved in a

different manner or that the issues presented were adequate to deserve encouragement to proceed

further."  *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct.

1595, 146 L. Ed. 2d 542 (2000)).

Here, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate his entitlement to relief, consistent with AEDPA, on any of his claims. Petitioner has not made a substantial showing of the denial of any constitutional right. *See Miller-El*, 537 U.S. at 336. For these reasons, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the reasons explained above, the Court denies Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254, and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

Dated: July 30, 2012.

**ENTERED**

**AMY J. ST. EVE**
**United States District Judge**